IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEGHENY ENGINEERING COMPANY, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 17-1200 |
| | ) Chief Judge Mark R. Hornak |
| v. | ) Magistrate Judge Maureen P. Kelly |
| | ) |
| HAVTECH LLC *formerly known as* | ) |
| HAVTECH, INC. *doing business as* | ) |
| HAVTECH INVESTMENTS LLC *also* | ) |
| *known as* THERMAL TECH LLC *also known* | ) |
| *as* HAVTECH PENNSYLVANIA LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION

Allegheny Engineering Company ("AEC" or "the Plaintiff") sued Havtech LLC ("Havtech" or "the Defendant") in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging three causes of action arising under Pennsylvania law—tortious interference with contractual relations, misappropriation of trade secrets, and civil conspiracy. (ECF No. 1-2.) The Complaint was removed to this Court on September 12, 2017, and the case was referred to United States Magistrate Judge Maureen P. Kelly. Now pending before the Court are three Motions—the Defendant's Motion for Summary Judgment (ECF No. 92), the Defendant's Motion to Strike (ECF No. 121), and the Plaintiff's Motion to Strike (ECF No. 128).

The Magistrate Judge's Report and Recommendation (ECF No. 132), was filed on January 29, 2020 and recommends as follows—that:

(a) The Defendant's Motion for Summary Judgment be granted;

(b) The Defendant's Motion to Strike the Affidavit of Erik Densmore be granted in part and denied in part; and

1

(c) The Plaintiff's Motion to Strike Havtech's Reply to the Plaintiff's Response to Havtech's Concise Statement of Material Facts be denied.

The Court has reviewed the Motions, the Report and Recommendation, the Plaintiff's Objections, and the Response thereto. Upon that review, the Court will adopt the Report and Recommendation ("R. & R.") in all respects, except for one.

**LEGAL STANDARD**

The Court's standard of review of properly filed objections to the R. & R. is *de novo*. Fed. R. Civ. P. 72(b)(3). The Court may, "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* The Court additionally incorporates the legal standard for summary judgment set out in the R. & R.

**DISCUSSION**

The Court adopts the R. & R. in all respects as its Opinion with one exception. The Court concludes that, viewed in the light most favorable to AEC, there is a question of material fact with respect to Count I of the Complaint—tortious interference with contractual relations—based on the potentially false statement in Havtech's business plan that "many key customers" wanted Daikin to drop AEC and obtain new representation. Thus, while the Motion for Summary Judgment will be granted as to all claims other than that set out in Count I, there is a triable issue as to that Count, and summary judgment as to it will be denied.

In order to prevail on a tortious interference with a contractual relations claim (hereinafter "tortious interference"), the Plaintiff must demonstrate:

(1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party;

(2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring;

(3) the absence of privilege or justification on the part of the defendant;

(4) legal damage to the plaintiff as a result of the defendant's conduct; and

(5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). The R. & R. concluded, and this Court agrees, that AEC presented a jury question with respect to the first two elements. However, the R. & R. concluded that AEC failed, as a matter of law, to demonstrate that Havtech's conduct was neither privileged nor justified—the third element. The third element of a tortious interference claim is intended to protect "the right to divert business" in light of the "fierce and frequently ruthless competition expected in our free-market system." *Phillips v. Selig*, 959 A.2d 420, 431 (Pa. Super. Ct. 2008); *Assembly Tech. Inc. v. Samsung Techwin Co.*, 695 F. Supp. 2d 168, 176 (E.D. Pa. 2010). The burden is on the plaintiff to demonstrate that the defendant's conduct is neither privileged nor justified by showing that the defendant used "wrongful means." *Acumed*, 561 F.3d at 215. The *Acumed* Court held that for conduct to be wrongful "it must be actionable for a reason independent from the claim of tortious interference itself." *Id.* AEC proffered four (4) bases on which the conduct it alleges could be independently actionable.[1] The R. & R. found that the evidence for these bases was so meager and speculative that no reasonable jury would conclude that wrongful means were used to interfere with AEC's contractual relationship. (ECF No. 132, at 25.) However, in its review of the Record and in construing all

---

[1] (1) Misappropriation or disclosure of AEC customer/sale information; (2) Misappropriation or disclosure of Daikin confidential pricing/equipment selection information; (3) Disclosure of Daikin representative market share and quota information; and (4) Spreading a false rumor and making fraudulent statements to Daikin. (R. & R., ECF No. 132, at 25.)

3

evidence in the light most favorable to AEC, the Court concludes that AEC has presented evidence sufficient to create a jury question with respect to "wrongful conduct" and has therefore satisfied the third element of a tortious interference claim.

The one basis for which AEC has presented a genuine dispute of material fact is whether Havtech engaged in commercial disparagement. Havtech submitted a business plan for the Pittsburgh territory to Daikin on January 26, 2017. (ECF No. 132, at 13.) At this point in time, AEC and Daikin were in a month-to-month representation agreement. (*Id.*) In that business plan, Havtech stated, "[w]e have also learned that many key customers in the territory would like to see a change in representation for Daikin Applied and Daikin North America." (ECF No. 109-116, at HAV004315.) By Havtech's own account, this statement was intended to allude to AEC. (Roetering Dep., ECF No. 109-4, at 265:5–7 ("Q: Again, this is referring to a change from Allegheny Engineering? A: It is.").) However, Havtech was only able to point to *one* customer that wanted Daikin to get new representation. Joe Roetering, the Havtech employee who authored this portion of the business plan, testified that he could personally recall only *one* customer that did not like working with AEC. (*Id.* at 265:11–266:19.) However, Roetering also testified that he authored the statement based on information he received from other salespersons. (*Id.* at 266:13–19.) Yet, there is no record evidence to corroborate this assertion, or the facts one layer beneath it. In fact, one of the salespeople that Roetering named as a source, Charles Brown, testified that he could not recall any customers to which this sentence was intended to refer. (Brown Dep., ECF No. 99-3, at 222:14–223:13.)

The elements of commercial disparagement are:

(1) the publication of a false statement;

(2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss;

(3) pecuniary loss does in fact result; and

(4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Neurotron Inc. v. Med. Serv. Ass'n of Pennsylvania, Inc.*, 254 F.3d 444, 448–49 (3d Cir. 2001). The R. & R. concluded that AEC had failed to demonstrate that any disparaging statements made by Havtech, including the "many key customers" statement, were more than opinion, hyperbole, or puffery based on some element of truth. (ECF No. 132, at 27–28 (citing *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985).) However, the Third Circuit in *Redco* held that if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis *and* those unstated, underlying facts are false, "the Constitution does not protect the opinion." *Redco*, 758 F.2d at 972.

Under this standard and viewing the evidence in the light most favorable to AEC, a jury could reasonably conclude that the statement at issue was either false in and of itself, or an opinion stated in a manner implying that it draws upon facts that turn out to be false. *See id.* Even if the statement was based on "at least one" customer who wanted Daikin to get new representation, the statement read in its entirety would support a jury conclusion that it rings false. The business plan represented not that a single key customer wanted new representation, but rather that there were *many*. The word "many" does not merely communicate more than one. In the present context, "many" signifies a collection "consisting of . . . a *large* but indefinite number" of key customers. *Many*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2002) (emphasis added); *see also Many*, OXFORD ENGLISH DICTIONARY (3d ed. 2000) ("Designating a large (indefinite) number."). Furthermore, the use of the word "key" in this context could also be

reasonably interpreted as, and found to be, an opinion drawing upon unstated facts. Yet, as with the sheer number of customers, there is little in the record for a jury to conclude any significant number of *key* customers wanted Daikin to drop AEC. Based on what is currently in the Record, a reasonable jury could conclude that this statement was not mere puffery or hyperbole, but was in fact false, satisfying the first element of a commercial disparagement claim.

There is also sufficient record evidence for a jury to conclude that the other elements of a commercial disparagement claim are met. For the second element, a jury could conclude that Havtech either intended the statement to cause pecuniary loss or reasonably should have known that such loss would result. For instance, the business plan containing this statement was written for the purpose of soliciting Daikin's business in the Pittsburgh territory. For the third element, pecuniary loss did result when, a few months after providing the business plan, Daikin terminated its contract with AEC on April 11, 2017. (ECF No. 132, at 13.) Lastly, there is some evidence from which a jury could conclude that Havtech either knew that the statement was false when it was made, or acted in reckless disregard for its falsity. The author of the statement could only recall one customer who had expressed dissatisfaction with AEC, and his claim to have been given examples of additional dissatisfied customers by other salespeople is not borne out by other evidence or testimony. Thus, there is record evidence from which a jury could conclude that he harbored a subjective doubt as to its truth, which is the key to the "reckless disregard" issue, so there is a jury question on this final element as well.

Given that there is a jury question as to whether Havtech engaged in commercial disparagement, the third element of AEC's tortious interference claim is met. In other words, there is a genuine dispute as to whether Havtech used "wrongful means" and thus whether their conduct

was either privileged or justified. Therefore, a jury could conclude that the first three elements of a tortious interference claim are satisfied.

AEC also presents a jury question with respect to the final two elements—legal damage and reasonable likelihood of a prospective contract. For the fourth element, AEC's legal damage stems from any financial harm incurred from its loss of the existing Daikin contract and any prospective contracts. The final element of a tortious interference claim only applies to prospective contracts. *Acumed*, 561 F.3d at 212. Therefore, AEC has satisfactorily presented a jury question for tortious interference with its then-existing Daikin contract. However, the R. & R. also concluded that, under the first tortious interference element, AEC had satisfactorily shown a *prospective* contractual relationship with Daikin. (ECF No. 132, at 22–23.) To make out a tortious interference claim for a prospective contractual relationship, AEC must show that there was a reasonable likelihood that the relationship would have occurred *but for* Havtech's interference. On the facts set forth, a jury could reasonably conclude that AEC had a reasonable likelihood of renewing its contract with Daikin but for Havtech's potentially false and misleading statement about the dissatisfaction of Daikin customers with AEC's representation. Two regional general managers for Daikin, David Godsil and Clint Downing, testified to the impact of the business plan on Daikin's decision to drop AEC and contract with Havtech.[2] Godsil testified that Daikin would not seriously discuss "making a change" unless they "get a business plan of some sort from a rep." (ECF No. 109-9, at 108:18–25.) Downing testified that he was "[v]ery impressed" by the business plan Havtech provided and that the information the plan provided was important to him. (ECF No. 109-16, at 89:17–25.) Downing further testified that he relied in part on the plan when considering

---

[2] Clint Downing's position is known as a Regional General Manager 1 ("RGM-1"). (ECF No. 109-9, at 29:21–22.) RGM-1s report to RGM-2s, of which there are only three across the country. (*Id.* at 29:22–24.) David Godsil is one of the three RGM-2s at Daikin. (*Id.* at 29:16–17.)

replacing AEC with Havtech. (*Id.* at 90:1–4.) A jury could reasonably conclude in light of this testimony, and given the nature of the statement in the business plan, that a prospective contractual relationship between AEC and Daikin was directly impeded by Havtech.

**CONCLUSION**

For the foregoing reasons, the Report and Recommendation will be adopted in all respects except as to Count One of the Complaint. Accordingly, Havtech's Motion for Summary Judgment, ECF No. 92, will be granted in part and denied in part. Summary Judgment will be granted in favor of Havtech as to all claims other than Count I. Havtech's Motion to Strike, ECF No. 121, will granted in part and denied in part, as set forth in the R. & R. AEC's Motion to Strike, ECF No. 125, will be denied.

MARK R. HORNAK
CHIEF UNITED STATES DISTRICT JUDGE

Dated: March 19, 2020

cc: The Honorable Maureen P. Kelly
United States Magistrate Judge

All counsel of record